REVISED OCTOBER 8, 2007

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 11, 2007

Charles R. Fulbruge III
Clerk

No. 06-20069

THOMAS WRIGHT

Plaintiff-Appellant

v.

ALLSTATE INSURANCE COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
(4:03-CV-915)

Before HIGGINBOTHAM, WIENER, and GARZA, Circuit Judges.

Wiener, Circuit Judge:

Plaintiff-Appellant Thomas Wright appeals the district court's refusal to grant him leave to amend his complaint to include extra-contractual claims against Allstate Insurance Company ("Allstate"), the Write Your Own ("WYO") insurance company that issued his federal flood insurance policy. We affirm.

I. FACTS & PROCEEDINGS

As the facts of this case are fully set forth in Wright v. Allstate[1] ("Wright I"), we summarize them only briefly here. Wright purchased a Standard Flood Insurance Policy ("SFIP") from Allstate to cover his Houston home. Under the

---

[1] 415 F.3d 384 (5th Cir. 2005).

terms of the National Flood Insurance Act ("NFIA"), Allstate, as a WYO insurer, was authorized to issue flood insurance policies in its own name. The terms and conditions that must be included in such policies are set by the Federal Emergency Management Agency ("FEMA"). All WYO insurers, such as Allstate, act as the fiscal agent of the United States.

In 2001, Wright's home sustained damages from Tropical Storm Allison. When he was unable to reach an agreement with Allstate as to the amount of damages caused by the storm, Wright refused to sign the proof of loss proffered by Allstate's adjuster. Instead, Wright submitted his own proof of loss, writing "to be determined" in the spaces for cost of repairs, depreciation, cash value, and net amount claimed. Allstate responded by letter, stating that "we are accepting this proof in compliance with the policy conditions concerning the filing of a Proof of Loss." Allstate's letter continued, "we expressly reserve all of our rights and defenses in connection with the ascertainment as to the value and loss, if any, and we do not in any way in acknowledging receipt of this Proof of Loss waive any of the rights and defenses [that we possess]." Allstate later rejected Wright's claim because, according to Allstate, Wright failed "(1) to cooperate as required by the terms of the policy and (2) to file an adequate POL within the FEMA-prescribed time frame."

Wright filed suit against Allstate and one of its employees, Guy Chapman, asserting, inter alia, breach of contract and state law claims for fraud and negligent misrepresentation. Wright later sought leave to amend his complaint to include federal common law causes of action for fraud and negligent misrepresentation. The district court dismissed all but Wright's breach of contract claim, holding that the state law claims were preempted by federal law. The district court also denied Wright's request to amend his complaint to include federal common law causes of action for fraud and negligent misrepresentation. Although it held Allstate equitably estopped from asserting Wright's alleged

failure to file an adequate proof of loss as a basis for denial of Wright's claim, the district court determined that Wright had failed to prove that all of his claimed damages were caused by flooding and awarded Wright $24,029, plus costs and attorney's fees. Both parties appealed.

In Wright I, we held that Wright's state law claims were preempted by the NFIA; however, we remanded the case to the district court to clarify the basis of its denial of Wright's motion to amend his complaint. On remand, Wright's motion was again rejected because the court was "not aware by the pleading or otherwise of any federal common law cause(s) of action that might be asserted by [Wright]." The district court went on to characterize Wright's proposed claims as merely "state law causes of action that are preempted by the federal insurance program."

Unsatisfied with the district court's explanation on remand, Wright again appeals the court's order denying his motion to amend his complaint to include federal common law causes of action for fraud and negligent misrepresentation. According to Wright, the NFIA expressly provides for such claims, because the SFIP specifies that disputes arising from the handling of an insurance claim shall be governed by federal common law. Wright advances the alternative theory that the NFIA implicitly authorizes federal common law claims for fraud and negligent misrepresentation. We reject both of these contentions. As counsel conceded at oral argument that these are extra-contractual claims, Wright is asking us to create private causes of action that are neither expressly nor implicitly authorized by Congress. We decline this invitation to create a private right of action when Congress has not manifested its intent that one should exist.

## II. ANALYSIS

### A. Standard of Review

We review de novo whether the NFIA either expressly or implicitly authorizes a private federal common law cause of action for fraud or negligent misrepresentation.[2]

### B. Merits

We begin by addressing Wright's first assertion, that his extra-contractual claims for fraud and negligent misrepresentation are expressly authorized by the language of the SFIP. Concluding that they are not, we follow by addressing whether such claims are implicitly authorized.

#### 1. Express Authorization

Wright contends that the district court erred in refusing to allow him to add federal common law claims to his complaint, insisting that the NFIA, through its prescribed terms for the SFIP, expressly allows for extra-contractual claims in disputes arising under a flood insurance policy. We disagree.

"[W]hether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory instruction."[3] To determine if the NFIA contains express congressional authorization for a policyholder to bring extra-contractual claims against a WYO insurer, we look to the language of the statute itself. The National Flood Insurance Program ("NFIP") was created by the NFIA and is administered by FEMA.[4] Through its regulations, FEMA establishes the terms and conditions of the SFIP, the rate structures, and the

---

[2] Acara v. Banks, 470 F.3d 569, 570 (5th Cir. 2006).

[3] Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15 (1979).

[4] 42 U.S.C. §§ 4001, 4011(a).

premium costs for the program.[5]  Article IX of the SFIP dictates the controlling law:

> IX. What Law Governs
> This policy and all disputes arising form the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, and National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.[6]

Even though the NFIA does allow a policyholder to sue a WYO insurer for amounts due under the contract, nowhere in the NFIA or the SFIP does Congress explicitly reference any right of a policyholder to bring extra-contractual claims against a WYO insurer.[7]

Wright insists that, because the SFIP states that disputes arising from the handling of a claim under the policy are governed, in part, by federal common law, Congress intended for courts to allow policyholders to bring extra-contractual claims against an insurer.  Aside from the SFIP language itself, Wright provides no evidence to support this conclusion.  We previously recognized that the reference to federal common law in the SFIP directs courts to employ standard insurance principles when deciding coverage issues under the policy.[8]  It does not confer on policyholders the right to assert extra-

---

[5] Gallup v. Omaha Property & Cas. Ins. Co., 434 F.3d 341, 342 (5th Cir. 2005).

[6] 44 C.F.R. Pt. 61, App. A(1), article IX.

[7] 42 U.S.C. §§ 4053, 4072.

[8] See Hanover Bldg.  Materials Inc. v. Guiffrida , 748 F.2d 1011, 1013 (5th Cir. 1984) (quoting West v. Harris, 573 F.2d 873, 880-81 (5th Cir. 1978)) ("When such disputes [over coverage] arise, they are resolved under federal law 'by drawing upon standard insurance law principles.'").

contractual claims against WYO insurers–which claims, if successful, would likely be paid with government funds.[9]

Faced with the total absence of indicia of congressional intent to support his position, Wright attempts to rescue his argument by advancing that he is not asking us to create a new cause of action; he argues that federal courts have already recognized federal common law claims for fraud and negligent misrepresentation. Yet Wright fails to present a single example of such claims in the context of a hazard insurance policy.[10] The only case cited by Wright that does address an insurance contract is Pence v. United States, in which the widow of a sole beneficiary of a government-issued life insurance policy filed suit against the government to recover the proceeds under the contract.[11] The government defended the widow's claim by alleging that her husband had made fraudulent misrepresentations on his policy application.[12] Pence, a straight life insurance coverage case, does not stand for the proposition that a flood insurance

---

[9] During oral argument, Wright argued that if he were to prevail on his extra-contractual claim, the final judgment would be paid by Allstate, not from the public fisc. According to FEMA regulations, the government will reimburse a WYO insurer for litigation expenses as long as the conduct of the insurer is not "significantly outside the scope of the Arrangement." 44 C.F.R. Pt. 62, App. A, article III (emphasis added). As the regulations do not define the type of conduct that falls significantly outside the scope of the arrangement, the ultimate decision whether Allstate will be reimbursed rests with FEMA.

In a case similar to Wright's, FEMA made it clear that extra-contractual claims related to the handling of a flood insurance claim would be paid by the federal government. According to FEMA, it "will pay such expenses because in FEMA's judgment it is necessary for the continued functioning of the [flood insurance] program for FEMA to absorb that risk." Therefore, we presume that any amounts awarded to Wright on his extra-contractual claims would more than likely be paid by the federal government.

[10] See Mallis v. Bankers Trust Co., 615 F.Supp. 1158 (2nd Cir. 1980) (securities fraud); In re Adler, 247 B.R. 51, 116 (S.D.N.Y. 1999) (securities fraud); Marcus v. AT&T Corp., 938 F.Supp. 1158 (S.D.N.Y. 1996) (Federal Communications Act); Graham v. Renbrook Sch., 692 F.Supp. 102, 108 (D.Conn. 1988) (Age Discrimination Act).

[11] 316 U.S. 332, 333 (1942).

[12] Id.

policyholder may bring a federal common law extra-contractual cause of action for fraud in the handling of his flood insurance claim.

Wright nevertheless asks us to conclude–based solely on the language of the SFIP–that Congress intended federal courts to fashion remedies for NFIA policyholders in addition to those specifically contained in the statute. He cannot, however, provide any support for his assertion that the reference to "federal common law" in the SFIP somehow vests policyholders with the right to bring extra-contractual claims against a WYO insurer. We hold that neither the NFIA nor the SFIP expressly authorizes policyholders to file extra-contractual claims against a WYO insurer.

2. Implied Right of Action

Wright alternatively asserts that, even if a federal common law cause of action is not expressly provided for in the NFIA or the SFIP, authorization for such a remedy may be implied from the language and purpose of the NFIA. To determine whether we should infer a cause of action when one is not explicitly authorized by Congress, we must answer the four questions posed by the Supreme Court in Cort v. Ash.[13] The Cort questions are: "(1) whether the plaintiff is one of a class for whose especial benefit the statute was enacted; (2) whether there is an indication of legislative intent to create or deny such remedy; (3) whether such a remedy would be inconsistent with the underlying legislative purpose; and (4) whether the cause of action is one traditionally relegated to state law."[14] Cases subsequent to Cort have recognzied that all four factors may be important, but the determinative question is whether Congress intended to create a private right of action in favor of the plaintiff.[15]

---

[13] 422 U.S. 66, 95 (1975).

[14] Till v. Unifirst Federal Sav. & Loan Ass'n, 653 F.2d 152, 157 (5th Cir. 1981) (citing Cort, 422 U.S. at 95.

[15] California v. Sierra Club, 451 U.S. 287, 293 (1981) (internal citations omitted).

a. Especial Beneficiary

The first of Cort's questions requires us to determine whether Wright is "one of the class for whose especial benefit the statute was enacted."[16] A plaintiff is an "especial beneficiary" if the statute creates a federal right in favor of the particular plaintiff. "[T]he right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action."[17] Courts must consider the entire corpus of pertinent law to ensure that any interpretation is consistent with the purposes enunciated by Congress.[18]

Wright asserts that he is the especial beneficiary of the NFIA, because the primary purpose of the act is to benefit homeowners. Diametrically opposed to this contention, however, is our conclusion in Till v. Unifirst Federal Savings & Loan Ass'n, that the primary purpose of the NFIA is to reduce the overwhelming burden on the federal treasury.[19] In Till, borrowers sued a federal savings and loan association based on its failure to require them to obtain flood insurance pursuant to 42 U.S.C. §§ 4012a(b) and 4104a. To determine whether the NFIA afforded such borrowers a private cause of action, we first looked to the statutory language in sections 4012a(b) and 4104a. We found in that language no clear right in favor of the borrowers. Rather, "[t]he statutes merely require lending institutions to notify borrowers of flood plains and require appropriate flood insurance."[20] We then looked to the NFIA as a whole and determined that "the principal purpose in enacting the Program was to reduce, by implementation of

---

[16] Cort, 422 U.S. at 78 (internal quotations omitted).

[17] Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n.13 (1979).

[18] Till, 653 F.2d at 158 n.13.

[19] Id. at 159.

[20] Id. at 158.

adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance."[21]   Even though Till involved different sections of the NFIA than those implicated here, we perceive no reason why our earlier determination of the Act's purpose should not be applicable in the instant case.

Wright nevertheless urges that Till was decided incorrectly, insisting that the primary purpose of the NFIA is to benefit policyholders.  To support this contention, Wright cites congressional statements regarding the Housing and Urban Development Act of 1968, which contained the original text of the National Flood Insurance Act.  As described by Congress in the Introduction to the Housing and Development Act, the purpose of the Act is to "accelerate progress" in the home market and provide a "suitable living environment for every American family."[22]  Thus, Wright maintains, Congress clearly envisioned home owners as especial beneficiaries of the bill.  The Introduction of the Housing and Urban Development Act does not, however, include a single reference to the NFIA, flood insurance, or hurricanes.  We find more convincing the discussion contained in congressional statements, like those cited in Till, that specifically refer to the NFIA.

Wright's second reference is even less convincing.  To demonstrate that the NIFA was enacted to benefit policyholders, Wright points to the language contained in the heading of the NFIA, Title XI, in which Congress stated:

> Heavy losses over the year from hurricanes in the coastal areas and from storms in inland areas of the Nation dramatize the lack of insurance protection against flood damage.  Insurance protection against risk of destruction caused by tornadoes and other natural

---

[21] Id. at 159.

[22] H.R. REP. No. 90-1585 (1968), as reprinted in 1968 U.S.C.C.A.N. 2873, 2873.

catastrophes is generally available, but is not available against the risk of flood loss.[23]

At first glance this language might appear to support Wright's argument, but it is actually just a part of the language cited in Till,[24] which goes on to state:

> These facts underline the need for a program which will make insurance against flood damage available, encourage persons to become aware of the risk of occupying the flood plains, and reduce the mounting Federal expenditures for disaster relief assistance.[25]

Viewing this statement in its entirety, as we did in Till, we remain convinced that the primary purpose of the NFIA is to reduce the financial burden on the federal fisc.

### b. Legislative Intent

To answer the second question of the Cort analysis, we must examine the legislative history of the statute and determine whether there is congressional intent to create or deny a private right of action.[26] "[I]n cases where the statutes and legislative history are silent on the question of a private remedy, 'implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best.'"[27]

Wright insists that this requirement is fulfilled, because the SFIP specifically references federal common law as governing claims arising out of the insurance policy. Aside from this language, however, there is no indication in the legislative history or elsewhere that Congress intended to create or permit additional causes of action. Again, that lone reference to federal common law

---

[23] Id. at 2966.

[24] Till, 653 F.2d at 159 n.14.

[25] H.R. REP. No. 90-1585 (1968), as reprinted in 1968 U.S.C.C.A.N. 2966-67 (emphasis added).

[26] Cort v. Ash, 422 U.S. 66, 78 (1975).

[27] Till, 653 F.2d at 160 (citing Touche Ross & Co., 442 U.S. 560, 571 (1979).

instructs courts to consider standard principles of interpreting insurance contracts when resolving questions regarding the policy's coverage; it is not an invitation to courts to fashion additional remedies or causes of action.[28]

We deem it significant that Congress expressly provided a private remedy for policyholders in 42 U.S.C. §§ 4053 and 4072. These statutes allow a policyholder to sue in federal court if he is dissatisfied with the amount of a claim payment. That Congress expressly authorized private causes of action in other sections of the NFIA weighs against Wright's theory that Congress implicitly intended the courts to fashion additional causes of action. As the Supreme Court recognized in Touche Ross & Co. v. Redington, "when Congress wished to provide a private damages remedy, it knew how to do so."[29]

### c. Underlying Purpose/State Law Claim

The third and fourth Cort questions are relevant only if the answers to the first two indicate congressional intent to create a private remedy.[30] As we find no congressional intent to allow extra-contractual claims in flood insurance cases, it is unnecessary for us to address the last two questions of the Cort test. If we were to do so, however, the answers to the third and fourth questions would not change our conclusion. The third question of the Cort test asks whether creating a cause of action would be consistent with the underlying purpose of the legislation. We have already determined that the overarching purpose of the NFIA is to relieve the burden on the federal treasury caused by flood damage. Subjecting the government to extra-contractual claims on flood insurance policies would increase rather than confine the burdens on the federal government and the federal fisc that the NFIA was created to mitigate.

---

[28] Dickerson v. State Farm Fire & Cas. Co., Civ. Action No. 06-5181, 2007 WL 1537631, at *2 (E.D. La. May 23, 2007).

[29] 442 U.S. at 572.

[30] California v. Sierra Club, 451 U.S. 287, 297 (1981).

Inferring a private right of action would run counter to the underlying purpose of the Act. The last Cort question, which recognizes that it may be inappropriate to infer a cause of action based solely on federal law when a state law remedy exists,[31] is not applicable in this case, because the NFIA preempts state law claims that arise under federal flood insurance policies.[32]

### III. CONCLUSION

Our review of the language of the NFIA and the SFIP reveals no express authorization for a policyholder to bring an extra-contractual claim against a WYO insurer. Neither do we perceive any evidence that Congress implicitly intended that policyholders be able to file claims against WYO insurers other than those specifically provided for in the Act. As Wright's extra-contractual claims for fraud and negligent misrepresentation are neither explicitly nor implicitly authorized by the NFIA, the judgment of the district court is AFFIRMED.

---

[31] Cort, 422 U.S. at 84.

[32] Wright v. Allstate, 415 F.3d 384 (5th Cir. 2005).