# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3445

_____

Glenn K. Gunter; Lisa G. Gunter

*Plaintiffs - Appellants*

v.

Farmers Insurance Company, Inc.; American Security Insurance Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 24, 2013
Filed: November 21, 2013

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

After a flood caused damage to their home, Glenn and Lisa Gunter filed claims under their Standard Flood Insurance Policy (SFIP) with Farmers Insurance Company Inc. and their supplemental policy with American Security Insurance Company. Farmers promptly paid the amount claimed in the Gunters' timely filed proof of loss. When their home was later condemned as uninhabitable, the Gunters sued Farmers and American for breach of contract and various state law violations, seeking

recovery for additional loss. The district court[1] dismissed the state law claims as preempted and concluded that the breach of contract claim could not survive summary judgment because the Gunters failed to comply with the requirements of the SFIP. The court also granted summary judgment to American, reasoning that the Gunters could not collect on their supplemental policy until they had exhausted their primary policy. The Gunters appeal, and we affirm.

I.

Congress established the National Flood Insurance Program (NFIP) in 1968 in order to reduce the burden on the public fisc after flood disasters. 42 U.S.C. § 4001. The program is administered by the Federal Emergency Management Agency (FEMA). Id. § 4011. FEMA promulgated the Standard Flood Insurance Policy (SFIP) and directed that these policies may be issued through private insurers known as "Write Your Own" (WYO) companies. Id.; 44 C.F.R. § 62.23; 44 C.F.R. pt. 62 app. B. As "fiscal agent[s] of the Federal Government," WYO insurers deposit SFIP premiums in the United States Treasury and pay SFIP claims and litigation costs with federal money. 42 U.S.C. §§ 4017(a), (d); 44 C.F.R. §§ 62.23(g), (i)(6), (i)(9). WYO insurers cannot vary the terms of the SFIP without express written consent from the federal insurance administrator. 44 C.F.R. §§ 61.4(b), 61.13(d)–(e).

The Gunters' home was flooded on December 24, 2009. Their mortgagee held a SFIP through Farmers, a WYO carrier, in the amount of $87,900, and a supplemental flood insurance policy through American in the amount of $16,100. The Gunters initiated claims under these policies, stating that the flood had produced cracks along the interior and exterior walls of their home.

---

[1] The Honorable Brian S. Miller, Chief United States District Judge for the Eastern District of Arkansas.

Farmers sent an independent insurance adjuster, Tommy Tipton, and an engineer from U.S. Forensic, LLC to inspect the property. The engineer's subsequent report concluded that most of the damage to the home was unrelated to the December 24 flood. Pursuant to the SFIP the Gunters then submitted to Farmers a proof of loss claiming $12,488.04 and a building replacement proof of loss claiming $249.73. Farmers reviewed the proof of loss in light of the U.S. Forensic report and paid $12,237.77 of the Gunters' stated loss. Although American denied liability for any damage to the residence, it paid $1,610 for damage to a storage shed not covered by the SFIP.

In early March the Gunters' home was condemned as uninhabitable. In April the Gunters asked Farmers' adjuster Tipton to inspect the property again. He issued a new report and attached the findings from U.S. Forensic stating that the structural damage was not caused by the flood. The Gunters then hired Hall Engineering Ltd. to conduct an independent inspection of the residence, and it issued a report stating that approximately 30% of the building was damaged by settlement during and after the flood. The home was subsequently demolished; $69,487.07 then remained on their mortgage.

The Gunters sought additional recovery under their policies. They brought five claims against both Farmers and American: (1) specific performance, (2) unjust enrichment, (3) insurance bad faith, (4) violation of the National Flood Insurance Act, Code of Federal Regulations, and federal common law, and (5) breach of contract. They admit that they never filed a proof of loss for any additional recovery.

The district court granted Farmers' motion to dismiss all but the Gunters' breach of contract claim, concluding that the state law claims for specific performance, unjust enrichment, and insurance bad faith were preempted by federal law. It also decided that the "federal common law" claim was "essentially a re-labeled state-law claim" and thus preempted as well. The district court determined that a jury trial was

-3-

unavailable on the remaining breach of contract claim and granted Farmers' motion to quash the jury demand. Summary judgment was granted to Farmers after the court concluded that the Gunters had failed to submit a proof of loss for any recovery above the amount the company had already paid and they could therefore not recover under the SFIP. The district court also granted summary judgment for American, determining that the Gunters could not recover under their supplemental policy until they had exhausted their primary insurance policy with Farmers. The Gunters object to each of these conclusions.

## II.

We review a district court's grant of a motion to dismiss de novo. Parkhurst v. Tabor, 569 F.3d 861, 865 (8th Cir. 2009). Dismissal is proper if the plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Accepting all factual allegations as true, we review the complaint to determine whether its allegations are sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The district court granted the motion by Farmers to dismiss the Gunters' state law claims, ruling that they were preempted by federal law. It is well established that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that frustrate or interfere with federal law. Hillsborough Cnty., Fla. v. Automated Med. Lab., Inc., 471 U.S. 707, 712 (1985) (internal quotation omitted). Federal law may preempt state law expressly by explicitly prohibiting state regulation in a particular field or implicitly by thoroughly occupying the field of regulation. N. Natural Gas Co. v. Iowa Util. Bd., 377 F.3d 817, 821 (8th Cir. 2004). Preemption also occurs where there is a direct conflict between federal and state law. Id. Federal regulations can have the same preemptive effect as federal statutes. Fid. Fed. Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982).

We conclude that the Gunters' claims for specific performance, unjust enrichment, and bad faith are expressly preempted by federal law. The SFIP contains a provision that reads:

> This policy <u>and all disputes arising from the handling of any claim under the policy</u> are governed <u>exclusively</u> by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.), and Federal common law.

44 C.F.R. Pt. 61, App. A(1), Article IX (emphasis added). The underlined language amended an earlier version of the provision; it was added to ensure uniform interpretation of SFIP and to clarify that "matters pertaining to the [SFIP], including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law." 65 Fed. Reg. 34,824, 34,826–27 (May 31, 2000). We agree with the Eleventh Circuit that the plain language of this provision, as well as FEMA's stated purpose in amending it, "reflects a clear intent to preempt claims under state law." See Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1344 (11th Cir. 2007).

The Gunters argue that 42 U.S.C. § 4081(c), which makes an "agent or broker" liable for his own tortious conduct, demonstrates Congress' intent for state law claims to proceed against WYO insurers. FEMA regulations make clear, however, that WYO companies are not "agents or brokers" as used in this part of the code. See, e.g., 44 C.F.R. § 62.23. Moreover, the federal cases cited by the Gunters in support of their argument precede the amendment of Article IX of the SFIP and are therefore inapplicable here. As the Third Circuit explained in C.E.R. 1988, Inc. v. Aetna Casualty and Surety Co., 386 F.3d 263, 269 n.6 (3d Cir. 2004), the amendments to Article IX specifically impact the express preemption analysis. We conclude that Article IX as amended demonstrates the clear intent to preempt state law claims that arise from the handling of a claim under the SFIP. Because the Gunters' state law

grievances against Farmers arise from the handling of their claim under the SFIP, they are expressly preempted under Article IX.

The district court also granted Farmers' motion to dismiss the Gunters' extracontractual claims brought under federal common law, concluding that this was "essentially a re-labeled state-law claim" and thus also preempted by federal law. We agree. As explained above, Article IX dictates the governing law of the SFIP. 44 C.F.R. Pt. 61, App. A(1). The term "federal common law," as used in this provision, requires courts to use "standard insurance principles when deciding <u>coverage</u> issues under the policy." <u>Wright v. Allstate Ins. Co.</u>, 500 F.3d 390, 394 (5th Cir. 2007) (emphasis in original). The Gunters do not disagree with that principle, but they argue that "standard insurance law principles" are set and governed by state law. This argument conflicts with the plain language and prior interpretations of the SFIP.

In <u>Wright</u>, the Fifth Circuit determined that "federal common law" as used in the SFIP does not give policyholders, either expressly or implicitly, "the right to assert extra-contractual claims against WYO insurers–which claims, if successful, would likely be paid with government funds," because such a reading would allow the court to fashion remedies beyond those Congress provided in the NFIP. 500 F.3d at 394; <u>see also</u> <u>Scritchfield v. Mut. of Omaha Ins. Co.</u>, 341 F. Supp. 2d 675, 678–79 (E.D. Tex. 2004). The NFIP specifically allows a policyholder to sue a WYO insurer for breach of contract, 42 U.S.C. §§ 4053, 4072, but it does not contemplate extracontractual claims such as negligence or actions for a declaratory judgment. The reference to "federal common law" in the SFIP has been understood to direct courts to look to "standard principles of interpreting insurance contracts when resolving questions" about coverage, not to expand available remedies or causes of action. <u>Wright</u>, 500 F.3d at 397; <u>see also</u> <u>Scritchfield</u>, 341 F. Supp. 2d at 681–82.

In sum, the Gunters seek to bring tort and extracontractual claims under federal common law to obtain state law remedies otherwise preempted. It would frustrate the

intent of Congress to allow preempted state law claims to proceed under the guise of federal common law. We conclude that this claim was properly dismissed.

We also affirm the grant of Farmers' motion to quash the jury request made by the Gunters. In an action involving federal funds, a plaintiff is only entitled to a jury trial if Congress has granted that right by statute. See Grissom v. Liberty Mut. Fire Ins. Co., 678 F.3d 397, 401 (5th Cir. 2012) (citing Lehman v. Nakshian, 453 U.S. 156, 160 (1981)). The parties agree that the Gunters' breach of contract claim puts federal funds at stake, and thus a jury trial was not available to the Gunters.

## III.

We review de novo a district court's grant of summary judgment. Argenyi v. Creighton Univ., 703 F.3d 441, 446 (8th Cir. 2013). Construing all facts and drawing all reasonable inferences in favor of the nonmoving party, summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

The district court granted summary judgment to Farmers on the ground that the Gunters had failed to file a supplemental proof of loss and thus did not satisfy the prerequisites for suing on their additional claims. Under the terms of the SFIP the Gunters "may not sue . . . to recover money under th[eir] policy unless [they] have complied with all the requirements of the policy." 44 C.F.R. pt. 61 app. A(1), art. VII.R. One of these stated requirements is filing a proof of loss within 60 days of the flood. Id., art. VII.J.4.

The SFIP defines the proof of loss as "your statement of the amount you are claiming under the policy signed and sworn to by you." Id. While an insurance adjuster may provide the proof of loss form or assist the insured in preparing it, the SFIP is clear that insureds must use their own judgment concerning the amount of

loss. Id., art. VII.J.5, J.7. If the proof of loss is rejected, the insured has the option under the SFIP to accept the denial, to file an amended proof of loss within the original sixty days, or to exercise the rights under the policy. Id., art. VII.M.2.

As the proof of loss requirement is a regulatory limit on the disbursement of funds through a federal insurance program, it is to be strictly construed and serves as a condition precedent to recovery under the SFIP. Mancini v. Redland Ins. Co., 248 F.3d 729, 733 (8th Cir. 2001). When strictly construing SFIP requirements in Mancini, we determined that a proof of loss was invalid when accompanied by a transmittal letter only bearing the printed names of the insured, for it had not been "signed and sworn" as required by SFIP article VII.J.4. Id. at 734–35. The Gunters argue that our analysis in Mancini does not apply here because unlike the appellants in that case, they timely filed a valid proof of loss for the amount of their undisputed damage, thereby fulfilling the prerequisites for suing on the disputed amount of loss on the same residence.

A similar argument was rejected by the First Circuit in DeCosta v. Allstate Insurance Company, 730 F.3d 76 (1st Cir. 2013). The insured in DeCosta included with two timely filed proof of loss forms a sixteen page estimate from one of his adjusters claiming additional loss on the property. Id. at 78–79. After the WYO insurer paid the amount claimed in the proof of loss forms, DeCosta sued for the additional amount listed in the adjuster's estimate, arguing that the estimate satisfied a strict construction of the proof of loss requirement because it was submitted contemporaneously with two proof of loss forms. Id. at 85. The First Circuit rejected this argument, concluding that a signed and sworn proof of loss for building damages "claims only the amounts listed in those forms," and the insured must timely file an additional proof of loss to claim any additional amount of money. Id. The First Circuit reasoned that a strict construction of the SFIP is needed to protect sovereign immunity when federal funds are in question and to ensure uniformity in "the diverse jurisdictions inundated with flood insurance disputes in the aftermath of natural

disasters." Id. at 84. We agree. The SFIP is clear that statements by an adjuster are provided only as a courtesy, and the proof of loss is the signed and sworn final statement of the insured as to how much damage is claimed. Id. at 85 (citing Mancini, 248 F.3d at 735). The proof of loss requirement as strictly construed makes clear that the Gunters did not timely file one for the amount they now claim in this litigation.

The Gunters present four arguments as to why their failure to file an additional proof of loss should not bar recovery. First, the Gunters contend that Farmers should be estopped from asserting the proof of loss requirement as a bar to recovery. It is well established, however, that "estoppel cannot be used to compel the government to pay money from the federal treasury beyond the limits of a congressional appropriation." Mancini, 248 F.3d at 735 (citing Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 426 (1990)). In Mancini we explained that "the proof-of-loss requirement in the SFIP defines such a limit," and the insured's estoppel argument necessarily failed. Id. While we left open the possibility that "affirmative misconduct might justify estoppel against the government in some circumstances," the Gunters have not established misconduct here. Id. (internal citation omitted). The Gunters did not tell Tipton that they disagreed with the February 2010 proof of loss until after the 60 days to file a proof of loss had passed. The Gunters' failure to file a timely proof of loss for the disputed amount thus cannot have been the result of Tipton's representations, and the Gunters' estoppel argument fails.

Second, the Gunters argue that they are not bound by the amount listed in their proof of loss because they signed it under duress. To prove duress a party must show that (1) he involuntarily accepted the terms of the opposing party, (2) the circumstances permitted no other alternative, and (3) the circumstances were the result of coercive acts by the opposing party. W.R. Grimshaw Co. v. Nevil C. Withrow Co., 248 F.2d 896, 904 (8th Cir. 1957). While it is not clear that duress is available as a defense to a proof of loss, there is no need to reach that issue here

because the Gunters cannot show that they had no alternative to accepting the damage estimate in the U.S. Forensic report. See Howell v. State Farm Ins. Co., 540 F. Supp. 2d 621, 632 (D. Md. 2008). The SFIP explains that the proof of loss is the Gunters' own statement; even if assisted by an adjuster, they must use their own judgment in determining the amount of loss claimed in the form. 44 C.F.R. pt. 61 app. A(1), art. VII.J. The Gunters were thus not bound by the estimate in the adjuster's report, but rather were obligated to claim the amount of loss they believed they should recover. Their duress argument fails.

Third, the Gunters argue that Farmers repudiated the policy, relieving them of any obligation to file a supplemental proof of loss. We have not yet determined whether the doctrine of repudiation applies to the SFIP, and other circuits addressing the question are split. Compare Studio Frames Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 381–83 (4th Cir. 2004), with Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 176–77 (2d Cir. 2012). Here we do not need to decide whether repudiation can excuse noncompliance with the proof of loss requirement because the doctrine of repudiation does not apply. Cf. Jacobson, 672 F.3d at 177. Farmers did not disavow the policy, contend that it was not bound by the policy's terms, or attempt to return to the Gunters the premiums paid under the policy. Id. at 177–78. Rather, Farmers timely adjusted the claim and paid the Gunters the amount claimed in their February 2010 proof of loss.

Fourth and finally, the Gunters argue that the enforcement of the proof of loss requirement is a violation of due process. Other courts have rejected this argument, and we agree. The proof of loss requirement is by all indications a "reasonable means of advancing the NFIP's objectives of quickly compensating insureds while at the same time managing the program's impact on the federal treasury." Howell, 540 F. Supp. 2d at 633; see also Schumitzki v. Dir., Fed. Emergency Mgmt. Agency, 656 F. Supp. 430, 433 (D.N.J. 1987).

We therefore conclude that the Gunters' failure to file a proof of loss for any supplemental amount is a bar to recovery, and the district court correctly granted Farmers' motion for summary judgment.

The district court also granted summary judgment for American. The Gunters' policy with American contains the following provision:

> Other insurance. If there is any other valid or collectible insurance which would attach if the insurance under this policy has not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted.

Based on this language, the district court concluded that the American policy was supplemental. The Gunters could thus not recover from American for flood damage to their home because they had not exhausted their primary policy with Farmers. We agree.

Arkansas law governs the Gunters' policy with American, which was not issued under the NFIP. Since Arkansas case law on exhaustion in the flood insurance context is limited, the district court looked to the more fully developed concept of exhaustion related to underinsured motorist coverage. Cases in that area are clear that because such coverage is supplemental, the full limit of a tortfeasor's liability insurance must be paid before the insured is entitled to underinsured motorist benefits. Hartford Ins. Co. v. Mullinax, 984 S.W.2d 812, 815 (Ark. 1999); Birchfield v. Nationwide Ins., 875 S.W.2d 501, 504 (Ark. 1994). We agree that similar reasoning is applicable here where the flood insurance policy is likewise intended to be supplemental.

The Gunters rely on Waste Management of Minnesota Inc. v. Transcontinental Insurance Co., 502 F.3d 769 (8th Cir. 2007), to argue that "the full dollar value of the

-11-

Farmers policy of insurance does not have to be exhausted to trigger [American's] obligations." In <u>Waste Management</u>, however, we were interpreting Minnesota state law. In that case we also made clear that to show exhaustion, the insured must prove "that claims aggregating the full amount of the specific policy have been settled thereunder and full liability of the insurer discharged." <u>Id.</u> at 773 (internal citation omitted). The Gunters have recovered only $12,237.77 on their $87,900 policy with Farmers. Applying existing principles of exhaustion under Arkansas law, American's obligations as an excess insurer have not yet been triggered. The district court did not err by granting summary judgment for American.

IV.

Accordingly, we affirm the judgment of the district court in all respects.

_____