# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40135

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2015

Lyle W. Cayce
Clerk

BRIAN LOWERY, et al,

   Plaintiffs,

v.

FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE
COMPANY, a corporation,

   Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFFREY M. PYE; THERESA PYE,

   Plaintiffs - Appellees Cross-Appellants

v.

FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE
COMPANY, a corporation,

   Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before JOLLY, HIGGINSON, and COSTA, Circuit Judges.

COSTA, Circuit Judge:

No. 14-40135

Along with countless other structures on Galveston Island, Jeffrey and Theresa Pye's home was left in shambles after Hurricane Ike. Although they received some compensation from both their flood and wind insurers, they brought this suit seeking additional coverage under the flood policy. After a bench trial, the court denied the Pyes' claim for additional building coverage on the ground that the total recovery they had already received from insurers exceeded their total loss. As for contents coverage, the court awarded $2,500 for some car parts damaged in the storm. Both sides appeal. Concluding that federal common law governing the National Flood Insurance Program recognizes the rule against double recovery, we affirm the ruling that the Pyes are not entitled to additional building coverage. But we vacate the personal property award to the Pyes as they now concede it was in error.

**I.**

Jeffrey and Theresa Pye owned a two-unit residential building in Galveston. In 2007, an appraiser estimated the market value to be $195,000. They lived in one of the units and rented the other. The building was insured against floods by Fidelity National Property and Casualty Insurance Co., which participates in the National Flood Insurance Program. Under the Program, FEMA allows private insurers to issue government-backed flood insurance using FEMA's Standard Flood Insurance Policies (SFIPs). The Pyes had a SFIP issued by Fidelity with policy limits of $205,400 for building coverage and $50,000 for contents coverage, and $1,000 deductibles for each. A separate policy issued by the Texas Windstorm Insurance Association insured against wind damage.

Hurricane Ike severely damaged the Pyes' property when it made landfall in September 2008. They sought coverage from their wind insurer, and eventually brought suit and settled for $66,765.84, plus attorneys' fees and

2

No. 14-40135

expenses.  The Pyes also made claims on their flood policy.  Fidelity's adjuster inspected the damage and prepared a proof of loss—"a policyholder's statement of the amount of money being requested, signed to and sworn to by the policyholder with documentation to support the amount requested"[1]—that the Pyes signed.   Fidelity paid $76,968.23 for building damage and $30,367.49 for contents damage.  The payment excluded damaged car parts valued at $2,500.

The Pyes felt shortchanged.  Their lawyer commissioned a new estimate by Halley Lovato, who determined that the flood damage to their house amounted to $175,180.  The lawyer then prepared a new proof of loss that claimed the policy limit (over $250,000), despite Lovato's much lower estimate.  Fidelity rejected the claim.   In 2010, the Pyes sold their property, unrepaired, for $58,000.

The Pyes filed this suit against Fidelity in 2011.  Fidelity hired John Crawford to prepare a new damage assessment.  He measured the actual cash value of the flood damage at $147,340.01—significantly more than what Fidelity initially paid.

The parties consented to have the case tried by a magistrate judge and it proceeded to a bench trial.  Fidelity argued that the Pyes' proof of loss was invalid because the amount claimed (the full policy limit) was not supported by Lovato's estimate, and thus the company could not be held liable.  The court rejected this argument, holding that the Pyes were not responsible for their lawyer's "unauthorized" overstatement of their claim, and that the proof of loss need not exactly match the submitted documentation in order to be valid.   It

---

[1]    *See*   FEMA,   *Proof   of   Loss*,   https://www.fema.gov/media-library/assets/documents/9343.

No. 14-40135

therefore considered the proof of loss to be for the lower amount supported by the supporting documentation in the form of the Lovato estimate.

Once it resolved the proof of loss issue, the court determined the actual cash value of the flood damage.  It found the estimate Crawford did for Fidelity, at a value of $147,340.01, to be more credible than Lovato's.   It then applied Texas's "one satisfaction rule," which bars plaintiffs from recovering twice for the same injury; the Pyes, the court held, could not recover more than the total damage to their home collected from both their wind and flood policies.  It determined that the $143,734.07 the Pyes had already received for building damage—the $66,765.84 settlement from their wind insurer[2] and the $76,968.23 that Fidelity had already paid for building damage—plus the $58,000 received from the sale of the property exceeded the pre-Ike market value of $195,000.00.  The court thus awarded nothing for building damage.  With little discussion, however, it awarded $2,500 for car parts damaged in the flood.  The parties filed cross appeals.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*."  *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011).

## III.

Fidelity argues that the $2,500 judgment for damaged car parts should be reversed because the policy does not cover "[s]elf-propelled vehicles or machines, including their parts and equipment."  44 C.F.R. pt. 61, app. A(1)

---

[2] The court held that because the wind insurer's settlement did not allocate the funds between building damage and personal property damage, Fidelity was presumptively entitled to offset the entire amount.   The Pyes do not challenge this holding on appeal.

No. 14-40135

(SFIP) Art. IV(5).[3]  Because the Pyes concede this was error, we reverse that award.  We therefore need not address the other challenge Fidelity raises to the contents award: that the mismatch between the amount sought in the proof of claim and the estimate provided as supporting documentation renders the proof of claim invalid.

## IV.

The only contested issue is thus the Pyes' appeal of the ruling denying them additional coverage for damage to their building.  The Pyes argue that the trial court erred in applying Texas's "one satisfaction rule" to reduce the Pyes' award by amounts they already received from Fidelity, their wind insurer, and from the sale of their property.  Both parties agree it was error to apply Texas law.  Federal common law, not state law, governs the interpretation of the SFIP.  SFIP Art. IX; *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984) ("When [SFIP coverage] disputes arise, they are resolved under federal law by drawing upon standard insurance law principles." (internal citation and quotation omitted)).  Fidelity argues, however, that federal common law likewise limits the Pyes' coverage total recovery from both of their insurers to the total value of their loss.

We agree.  "[T]he reference to federal common law in the SFIP directs courts to employ standard insurance principles when deciding coverage issues under the policy."  *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394 (5th Cir. 2007) (emphasis omitted).  The rule applied by the magistrate judge is one such "standard insurance principle."  "One satisfaction rule" is, however, a label rarely used outside of Texas law or in the insurance context; courts and

---

[3] The terms of policies issued under the National Flood Insurance Program are set forth in the Code of Federal Regulations.

treatises more commonly refer to a bar on "double recovery." *See, e.g.*, *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 521–22 (5th Cir. 2010) (discussing Louisiana's law against "double recovery"); *AAA Mid-Atl. Ins. Co. v. Ryan*, 84 A.3d 626, 634 (Pa. 2014) (recognizing a "long-standing prohibition" on "double recovery" for the same injury); *Robichaux v. Nationwide Mut. Fire Ins. Co.*, 81 So. 3d 1030, 1038 (Miss. 2011) (stating that "double recovery for the same harm is not permissible"); 12 COUCH ON INSURANCE § 175:6 (discussing when the issue of "double recovery" arises). The rule flows from the principle that "[p]roperty insurance creates a contract of indemnity." *Id.* § 175:5. "The fundamental principle of a property insurance contract is to indemnify the owner against loss, that is to place him or her in the same position in which he would have been had no accident occurred." *Bradley*, 620 F.3d at 521 (internal quotation, citation, and punctuation omitted). Thus "both the extent and the limitation of recovery is found in the concept of making good the loss which the insured has sustained." 12 COUCH ON INSURANCE § 175:5; *see also* 2 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 10:1 (6th ed.) ("The total amount that an insured recovers under all applicable insurance policies cannot exceed the amount of the loss."). We thus hold that the standard principle of property insurance barring double recovery applies to SFIP coverage.

The Pyes argue that even if the bar applies generally, it is inapplicable here because the wind and flood policies are contracts that cover mutually exclusive risks. They cite our reasoning in *GE Capital Commercial, Inc. v. Worthington National Bank*, 754 F.3d 297 (5th Cir. 2014), a case applying Texas law. In that case, the recipient of a fraudulent transfer sought a credit for another party's settlement of a breach of contract suit arising out of the same transaction. *Id.* at 300–02. We denied the credit, holding that Texas's one-satisfaction rule is "limited to cases in which a plaintiff settles with an

alleged joint tortfeasor." *Id.* at 308. That conclusion, however, involved the application of Texas's one-satisfaction rule when "one claim sounds in contract and the other in tort," and thus the settling and nonsettling parties "do not share a common theory of legal liability." *Id.* at 305 n.6. We noted that "whether Texas's one-satisfaction rule precludes multiple recoveries for the same injury under different insurance contracts" is a "distinct" question, because in such cases "the settling and non[]settling parties share[] the alleged same contractual liability." *Id.* We expressed no conclusion on that latter question.

Furthermore, we have rejected an argument nearly identical to the Pyes' in a case applying Louisiana law. The homeowners in *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 523 (5th Cir. 2010), argued that "the mutually exclusive nature of the wind and flood policies" precluded their insurer's entitlement to an offset. We noted that the dispute was fundamentally about "who receives the potential windfall from an overpayment," the insurer or the insured. *Id.* at 524. We ruled in favor of the insurer:

> [T]he district court first evaluates whether the insured has already been fully compensated by payments under wind and flood insurance. If the court concludes that the homeowners' insurer is not liable for further payments to the insured because additional payments would result in a double recovery, then the homeowners' insurer effectively receives the benefit of the overpayment by the flood insurance.

*Id.* We noted, however, that principles of subrogation mean that "the benefit will not necessarily serve to enrich the insurer." *Id.*

Although *Bradley* was a diversity case applying Louisiana law, we see no indication that its application of Louisiana's statutory bar on double recovery to policies covering mutually exclusive risks is inconsistent with the general insurance law principles that inform federal common law. We thus

hold that the Pyes are not entitled to a double recovery—that is, their total coverage for all types of damage resulting from the storm cannot exceed their total losses resulting from that storm—notwithstanding the fact that the insurance policies cover different risks to the same property.

Finally, the Pyes contend that the court misapplied the double recovery rule by using the pre-Ike fair market value of their home, as opposed to the actual cash value of their house, as the limit on their recovery. The SFIP entitled the Pyes only to an "actual cash value loss settlement" because their house included two units. *See* SFIP Art. VII(V)(4)(b)–(c) (actual cash value settlement applies to two-family dwellings and units not used exclusively for single-family dwelling purposes). "Actual cash value" is defined in the SFIP as "[t]he cost to replace an insured item of property at the time of loss, less the value of its physical depreciation." SFIP Art. II(B)(2). In assessing the flood damage to the property at $147,340.01, the district court properly used such a replacement cost minus depreciation calculation, the one submitted by Crawford.

No calculation was presented, however, using that methodology for the entirety of the loss (that is, the loss attributable to both wind and flood damage). In determining the limit for double recovery, the district court thus accepted the only evidence of total loss before it: the $195,000 market value figure from the 2007 appraisal. The Pyes contend this was error in light of *Bradley*, which reversed a grant of summary judgment in favor of the insurer that relied solely on the market value of the house in applying the double recovery bar. 620 F.3d at 520–23, 528. Because Louisiana law provides that "[a]ctual cash value is not necessarily synonymous with market value at the time of the loss" and the insureds had presented an alternative estimate of total loss based on the cost of rebuilding rather than market value, the district

court "incorrectly held that there was no evidence suggesting the Bradleys had uncompensated losses." *Id.* at 520–23. Unlike in *Bradley*, the trial court here made a factual determination of total loss after trial in applying the double recovery bar. And the Pyes presented no competing figure of total loss based on replacement cost. *See id.* at 523. Even if the double recovery bar should be calculated in this case using replacement cost minus depreciation, we therefore are not convinced that the evidence of fair market value would be irrelevant to that calculation.[4] *Id.* at 520 ("Actual cash value is *not necessarily synonymous* with market value at the time of loss." (emphasis added)).

But there is a more fundamental point from *Bradley* that makes it unnecessary for us to decide if market value is admissible, even if not controlling, evidence of an actual cash value determination that uses a replacement cost minus depreciation methodology. *Bradley* appropriately treated the question of the proper measure of recovery under a policy, which is controlled by policy language when defined in the contract as it is here,[5] as distinct from the question of how the bar on double recovery is applied. *Id.* at 520–23 (treating the "actual cash value" due under the policy as a separate question than "measure of loss for purposes of determining double recovery"). Because double recovery is itself a common law insurance principle, those background principles of insurance law govern the proper measure for calculating it. *Id.* at 522 (using actual cash value, defined as replacement cost minus depreciation, for the cap on total recovery because Louisiana law uses

---

[4] Indeed, the Pyes did not challenge admission of the 2007 appraisal on relevancy grounds, arguing only that it was hearsay. They renew that hearsay objection on appeal, but we find no error in the trial court overruling it.

[5] The homeowner's policy in *Bradley* did not define actual cash value, so the court applied Louisiana law's definition of "reproduction cost less depreciation." 620 F.3d at 520. As noted above, the SFIP policy at issue in this case provides that definition in the contract.

that measure when no repairs have occurred).  Indeed, it would pose problems to merely transfer the measure of recovery as defined in one policy into the "double recovery" calculation of total loss because the multiple policies providing coverage may use different methodologies.  In this case, for example, the record does not indicate how recovery under the wind policy is valued.  The SFIP's definition of actual cash value as replacement cost minus depreciation thus does not control how the cap on total recovery should be calculated.  Nor does *Bradley*'s use of that same standard as it was derived solely from Louisiana law.  *Id.*

So how should the total loss amount be calculated when applying the double recovery bar under federal common law?  In a number of states (including the largest one in this circuit) fair market value is not just considered an indicator of actual cash value, it is considered the leading indicator.  12 COUCH ON INSURANCE § 175:24 ("[T]here is a priority of rules to determine actual cash value as follows, (1) where market value is easily determined, actual cash value is market value . . . ."); J.A. Tyler, Annotation, *Test or criterion of "actual cash value" under insurance policy insuring to the extent of actual cash value at time of loss*, 61 A.L.R. 2d 711 § 3 (noting that although market value is the prevailing measure of damages to personal property, some courts also use it for real property when a "damaged or destroyed building has a market value"); *Ghoman v. N.H. Ins. Co.*, 159 F. Supp.2d 928, 934 (N.D. Tex. 2001) ("Under Texas law, the term 'actual cash value' is synonymous with 'fair market value.'" (citing cases)).  In other states, fair market value is at least a factor to be considered under the increasingly applied "broad evidence rule." Tyler, 61 A.L.R. 2d 711 § 7[c] ("In recent years, there has been a tendency on the part of a substantial number of courts to reject reproduction or replacement cost, or market value, as the sole test or

criteria of the actual cash value of buildings. These courts have relied upon what might be termed the broad evidence rule.") That rule recognizes that "any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property might be considered by the trier of facts in determining 'actual cash value' at the time of loss." *Id.* at § 5; *see also J&H Auto Trim Co. v. Bellefonte Ins. Co.*, 677 F.2d 1365, 1369 (11th Cir. 1982) (applying broad evidence rule for assessing actual cash value under Florida law); *Elberon Bathing Co. v. Ambassador Ins. Co.*, 389 A.2d 439, 443–45 (N.J. 1978) (same applying New Jersey law); *Wis. Screw Co. v. Fireman's Fund Ins. Co.*, 297 F.2d 697, 699–700 (7th Cir. 1962) (same applying Wisconsin law); *McAnarney v. Newark Fire Ins. Co.*, 159 N.E. 902, 903–04 (N.Y. 1928) (early leading case adopting the broad evidence rule when fire destroyed breweries that no longer had significant economic use because of Prohibition).

The broad admissibility rule makes sense. In a well-functioning market, any difference between the fair market value of a residential property and its replacement cost minus depreciation should be minimal. *See McAnarney*, 159 N.E. at 903 (recognizing that "[v]alue ascertained by market price is necessarily expressive of a suitable deduction for depreciation" in explaining why deducting depreciation from market value would result in a double deduction). Otherwise, supernormal profits could be obtained by constructing new homes in the area. In such cases, the broad evidence rule thus allows the factfinder to weigh the competing calculations and determine which is most credible for the particular case. And in other situations, when the lack of a robust market or market failures makes one or more methods of calculation difficult, the broad evidence rule provides flexibility. *See id.* at 904 (identifying situations when market value may not be ascertained). Because so many states would allow consideration of market value as either the leading measure

of loss or, under the broad evidence rule, a permissible measure, we conclude that the federal common law governing flood policies at least allows for consideration of market value in determining the total loss amount for double recovery purposes. *See, e.g.*, *Wright*, 500 F.3d at 394 (stating that federal common law governing federal flood policies is informed by "standard insurance principles"); *see also Manning v. Hayes*, 212 F.3d 866, 874 (5th Cir. 2000) (affirming that federal common law may be determined by reference to analogous state law, so long as such principles are consistent with federal policy (citing cases)).

As the  fair market value of $195,000 was the only evidence of total loss submitted at trial, the district court did not err in concluding that the money the Pyes had already received in excess of $200,000 precluded any additional recovery for building damage.  We will thus not disturb the judgment entered against the Pyes on their claim for additional building coverage.

The judgment is AFFIRMED in part and REVERSED in part.  We RENDER a take-nothing judgment in Fidelity's favor.