# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 4, 2013

Lyle W. Cayce
Clerk

No. 12-50376

In the Matter of: WREN ALEXANDER INVESTMENTS, L.L.C.,

Debtor

_____

WREN ALEXANDER INVESTMENTS, L.L.C.,

Appellant

v.

INTERNAL REVENUE SERVICE,

Appellee

Appeal from the United States District Court
for the Western District of Texas
U.S. Dist. Ct. No. 5:11-CV-374

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Wren Alexander Investments, L.L.C. ("Wren LLC") appeals the district court's affirmance of the bankruptcy court ruling permitting the IRS's claim

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50376

against Wren LLC based on a lien originating against a delinquent third-party taxpayer, United Capital Investment Group, Inc. ("UCIG"). We AFFIRM.

## I. Background

In 1999, UCIG purchased a 551-acre tract of land in Medina County, Texas (the "Property"). The Property was developed by UCIG's owner, John Walker, II ("Walker"), into a horse ranch for the benefit of Charles Pircher ("Pircher"), a manager for UCIG and several other companies also owned by Walker. Pircher built a large luxury home on the Property for his family. Though no written agreements were ever formalized and Pircher paid no rent, Pircher had an informal agreement with Walker that Pircher would, at some point, repay the money he used to develop the Property.

Wren Alexander ("Alexander") has known Pircher since the late 1980s. In addition to placing loans for Walker's companies, Alexander made personal loans to UCIG, had numerous business dealings with Pircher (including forming companies with him), and visited Pircher in his home. Alexander also went into business with Pircher's wife, Jeannie, to operate a restaurant. In sum, the evidence supports a conclusion that Pircher and Alexander were close business associates and friends.

In 2001, UCIG obtained a loan in the amount of $325,000, payable to Alexander, but funded by Waring Investments, Inc. ("Waring"). In 2003 and 2004 this debt was rolled into more financing, totaling $2,000,000 at 18 percent annual interest and secured by the Property. After paying off the purchase money loan on the Property, UCIG used the balance of the funds to pay restitution owed by Pircher from a prior criminal conviction and to build improvements on the Property.

While Pircher was spending the income of Walker's properties on his ranch project and to pay his criminal restitution, Walker's companies were failing to pay millions of dollars in payroll taxes. In 2004, the IRS began to investigate

Walker's companies, including UCIG, for unpaid tax liabilities and began to file tax liens against them. In November 2004, a lien was filed against AK of Nevada, a related company that also was owned by Walker and managed by Pircher, with the Texas Secretary of State in Travis County, Texas.

In December 2004, UCIG sold the Property to Medina Heritage, Ltd. ("Medina"), an entity owned by Pircher and his family, in exchange for Medina assuming the $2,000,000 debt existing on the Property. This deed was not recorded, however, until 2006, one month after the first Notice of Federal Tax Lien was filed against UCIG. By 2007, Medina had fallen two years behind in ad valorem taxes, and was months behind on loan payments to the first lien holder, Waring. Unable to refinance the Property, Pircher entered into an agreement with Alexander, whereby Alexander would purchase the Property from Medina and lease it back to Pircher at a below-market rental price. The purchase price was not based on value, but on the amount needed to pay off the existing lien and back taxes. The transfer was accomplished through Alexander's formation of Wren LLC, which took title to the Property for $2,275,000.

At the time Wren LLC purchased the Property, there were no liens filed of record on the Property except for the Waring lien and the ad valorem taxes. Prior to this transfer, the IRS had sought to collect unpaid employment taxes by UCIG—as well as by Walker's other companies—in amounts in excess of tens of millions of dollars for each company. This effort to collect was unsuccessful and the IRS filed an "Alter Ego, Nominee, or Transfer" lien against the Property on April 14, 2008, in the amount of $23,385,778.97.

Six months after the lien was filed, Wren LLC filed for bankruptcy. The IRS filed a proof of claim in the bankruptcy for more than $173,000,000, the entire amount of the taxes owed by UCIG and its related companies, asserting that the entire amount was secured by the Property through the previously filed

No. 12-50376

tax liens. Wren LLC filed an objection to the IRS's proof of claim, challenging both the validity of the tax assessment and the lien on the Property. During the pendency of bankruptcy proceedings, the bankruptcy court permitted the Property to be sold, and after paying all fees and encumbrances on the Property, $1,192,612 was deposited into the registry of the Court pending the resolution of Wren LLC's objection to the IRS's proof of claim.

The bankruptcy court overruled Wren LLC's objection to the IRS's proof of claim. The bankruptcy court permitted the IRS's claim against UCIG and its lien on Wren LLC's property by virtue of the two fraudulent transfers of the Property (from UCIG to Medina, and from Medina to Wren LLC) and held that, as a third party, Wren LLC could not challenge the validity of the IRS's tax assessment against UCIG. Wren LLC appealed the bankruptcy court's denial of its objection to the district court. The district court affirmed the bankruptcy court's order. Wren LLC appealed to this court.

## II. Discussion

### A. Standard of Review

In the bankruptcy appeals process, we act as the second level of appellate review, but we perform an identical task as the district court. *In re U.S. Abatement Corp.*, 79 F.3d 393, 397 (5th Cir. 1996). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Id.* Though we benefit from the district court's analysis of the issue before us, we are not bound by it. *Id.* at 397–98.

### B. Wren LLC's Ability to Challenge the IRS Lien

Wren LLC argues that the bankruptcy court and district court erred in concluding that it was not entitled to challenge the IRS lien because UCIG, not Wren LLC, was the taxpayer as to that claim. *See Myers v. United States*, 647 F.2d 591, 604 (5th Cir. 1981) ("We do not believe due process requires that Myers, a third person, be allowed to challenge the tax liability of the former

owner of the property."). Wren LLC argues that *Myers* is inapplicable because the liens in that case were filed of record before Myers purchased the property in question. It also contends that 11 U.S.C. § 505(a)(1),[1] which was not at issue in *Myers*, allows a debtor to challenge a lien asserted in bankruptcy even if the debtor is not the original taxpayer.

We conclude that it is unnecessary to reach the question of whether Wren LLC has the right to challenge the lien because, even assuming *arguendo* that it has that right, it failed to offer any evidence to overcome the presumption of correctness of the IRS tax assessment. *See In re Mirant Corp.*, 440 F.3d 238, 245 (5th Cir. 2006) ("'This Court may affirm [the bankruptcy court] if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below.'" (citation omitted)). Even where an original taxpayer is challenging an assessment, the IRS tax assessment is presumed correct. *United States v. Lochamy*, 724 F.2d 494, 497-98 (5th Cir. 1984); *see also Bull v. United States*, 295 U.S. 247, 260 (1935). Here, the IRS proved its assessment through a Form 4340 ("Certificate of Assessments, Payments, and Other Specified Matters"). *See Stallard v. United States*, 12 F.3d 489, 493 (5th Cir. 1994) (a Form 4340 assessment is "presumptively valid"). Wren LLC was then required to challenge the amount or validity of the assessment through competent evidence establishing the assessment is arbitrary and erroneous.[2] *See Yoon v. Comm'r*, 135 F.3d 1007, 1012 (5th Cir.1998) (noting the taxpayer must make this showing by a preponderance of the evidence). If, as it contended at

---

[1] That section states: "[T]he court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1).

[2] Wren LLC contends that the IRS assessment is presumptively invalid because it is higher than the amount of wages UCIG reported paying. However, the IRS contends UCIG grossly understated the amount of wages it actually paid. Thus, Wren LLC's speculation does not undermine the IRS's evidence.

oral argument, it was not permitted to present evidence due to the bankruptcy court's ruling that it was not allowed to challenge the validity or amount of the assessment,  it was required to preserve any error by making an offer of proof or proffer.  *See* FED. R. EVID. 103(a)(2). It failed to do so, accordingly, we conclude that the bankruptcy and district courts did not err in finding the IRS assessment valid as against the Property.

C.  Good Faith

Wren LLC also challenges the bankruptcy court's conclusion that it was not a good faith purchaser for reasonably equivalent value.  The parties agree that Texas's Uniform Fraudulent Transfer Act ("TUFTA") is the relevant statute for purposes of assessing the fraudulent transfer alleged here from UCIG to Medina and from Medina to Wren LLC.  *See* TEX. BUS. & COM. CODE § 24.001 *et seq*. The bankruptcy court analyzed each transaction and found both transactions to be fraudulent, a conclusion not challenged here.  Thus, it concluded that the Property was subject to the lien against Wren LLC unless Wren LLC was a good faith transferee for reasonably equivalent value.  Wren LLC argues that instead of treating it like an initial transferee under Texas Business and Commerce Code § 24.009(a), it should be viewed as a "subsequent transferee," and thus evaluated under § 24.009(b)(2).  *See id.* § 24.009(a)–(b)(2).

Again, it is unnecessary to address this argument because under either analysis, Wren LLC must prove "good faith."[3]  Where a transferee is (1) an insider and (2) "knows the transferor is insolvent at the time of the transfer, it cannot be a good faith transferee." *Flores v. Robinson Roofing & Const. Co.*, 161 S.W.3d 750, 756 (Tex. App.—Fort Worth 2005, pet. denied).

Wren LLC is a unquestionably an insider with respect to Medina.  Pircher and his family own Medina and Alexander owns Wren LLC.  Alexander and

---

[3]  Accordingly, we need not determine whether Wren LLC preserved this argument in the bankruptcy and district courts.

No. 12-50376

Pircher had known each other for about thirty years when Wren LLC acquired the Property from Medina. Pircher and Alexander have been involved in numerous business dealings together. Pircher hired Alexander to provide mortgage-brokering and loan-consulting services for Walker's companies and Alexander has provided personal loans to companies that Pircher manages, including UCIG. Pircher and his wife and Alexander have been co-owners and co-investors in multiple financial ventures. Moreover, there is no evidence in the record that the transfer of the Property from Medina to Wren LLC was conducted at arm's length. The purchase price of the Property was based on the amount Pircher needed to satisfy the existing mortgage and unpaid property taxes, not on a fair price negotiated between the parties. After the transfer, Alexander allowed Pircher to remain on the Property without a written lease agreement.

It is also clear that Wren LLC knew Medina was insolvent at the time of the transfer. Wren LLC was aware at the time of the transfer that Medina was behind on monthly mortgage payments to Waring Investments, at risk of foreclosure, and two years behind on property taxes. The bankruptcy court found that Wren took the property "with knowledge of 'such facts [as] would excite the suspicions of a person of ordinary prudence.'" *In re Wren Alexander Invs., LLC*, 08-52914-RBK, 2011 WL 748131, at *12 (Bankr. W.D. Tex. Feb. 23, 2011) (quoting *Hahn v. Love*, 321 S.W.3d 517, 527 (Tex. App.—Hous. [1st Dist.] 2009, pet. denied) (internal citations omitted)). The court further found that the facts known to Wren LLC that "should have aroused [Wren LLC]'s reasonable suspicions include the vastly reduced purchase price offered by Medina, the lack of an executed written document as to the reduced rent agreement, and the inability of Medina to pay its debts and taxes as they came due." *In re Wren Alexander*, 2011 WL 748131, at *12. Certainly, the continued treatment of the property as if Pircher owned it was a suspicious circumstance that should have

7

excited inquiry on Wren LLC's part. The bankruptcy court did not err in concluding that Wren LLC failed to prove "good faith" under § 24.009.

AFFIRMED.